AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| United States of America | ) |
|---|---|
| v. | ) |
| MYRON EDWARD BLAKE JR | ) Case No. 25-114 MJ |
| | ) |
| | ) |
| | ) |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **June 27, 2024** in the county of **Otero** in the **City of Mescalero** District of **New Mexico**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 113(a)(7) | Assault Resulting in Substantial Bodily Injury to a spouse or intimate partner, a dating partner. |
| 18 U.S.C. § 1151, 1153(a) | Crimes occuring in Indian Country. |

This criminal complaint is based on these facts:
See attached affadavit.

☑ Continued on the attached sheet.

JACOB GLOSSOP
Digitally signed by JACOB GLOSSOP
Date: 2025.01.30 13:19:40 -07'00'

*Complainant's signature*

Jacob W. Glossop, Special Agent, BIA-OJS
*Printed name and title*

Sworn to ~~before me and signed in my presence~~ by telephone.

Date: 01/30/2025

*Judge's signature*

City and state: Las Cruces, New Mexico

Kevin R. Sweazea, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

1. I, Jacob Wade Glossop, having been duly sworn according to law, depose and state:

2. I am a Special Agent with the Bureau of Indian Affairs (BIA), Office of Justice Services (OJS), Department of interior (DOI), and have been since January 2023. I am currently assigned as a criminal investigator for the BIA Mescalero Agency, New Mexico. I am currently assigned to investigate Title 18 violations occurring on the Mescalero Apache Reservation, Otero County, New Mexico. I have completed over 480 hours of training in the Criminal Investigator Training Program at the Federal Law Enforcement Training Center. The training included but not limited to continuous case investigation and management, execution of search and arrest warrants, Law Enforcement photography and video, documentation and report writing, first responders to digital evidence, electronic surveillance techniques, and conducting investigations in the cyber environment. During my career, I have investigated violent crimes (including cases involving victims), death investigations, child sexual abuse, domestic violence, aggravated assault, and assault by strangulation. I previously served as a New Mexico State Police Officer for approximately four years, nine months. I was classified, trained, and employed as a certified State Police Officer with statutory arrest authority charged with conducting criminal investigations of alleged violations of state criminal statutes. I currently serve as an Infantry Officer in the U.S. Army Reserves. I have served nineteen years in a combination between regular active-duty Army, New Mexico National Guard, and U.S Army Reserve. During my military service, I have conducted multiple 15-6 UCMJ and Article-15 investigations at Platoon, Company, Battalion, and Brigade level. During my tenure with the BIA, I have received formal and informal training involving violent crimes, including multiple

strangulation, assault, and major crimes trainings, new detective trainings, investigative techniques trainings, and crime scene processing trainings.

3. I am the case agent investigating Myron Edward Blake. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officials, and witnesses. I have read reports and had discussions with investigators and have relied on their information as part of this affidavit. My BIA investigation in Blake began in approximately June 2024. Through the course of my investigation, I have read, and reviewed reports generated by the BIA and the Mescalero Apache Tribal Court. I have also read open-source information regarding Blake. I have reviewed audio and video recordings. I have met with victims and witnesses identified in this investigation. I have reviewed evidence, including, but not limited to, photographs, digital evidence, physical evidence, and medical reports as it relates to this investigation. This affidavit does not include all the information I know about the case. Unless otherwise noted, the dates I refer to in this affidavit are approximate.

## RELEVANT STATUTES

4. This investigation concerns alleged violations, including violations of:

    A. 18 U.S.C. §§ 113(a)(7), 1153 which provides, in relevant part, whoever, within Indian Country, assaults a spouse, intimate partner, or dating partner resulting in substantial bodily injury is guilty of a federal offense.

## FACTS AND CIRCUMSTANCES ESTABLISHING PROBABLE CAUSE

5. On June 27, 2024, at approximately 4:47 p.m., BIA Mescalero Dispatch received a 911 call from the defendant that the victim (known as Jane Doe throughout this affidavit) was bleeding

from her head and that the bleeding would not stop. The victim gave her location as 980 Mescalero Blvd on the Mescalero Apache Reservation.

6. BIA Officers responded shortly thereafter. Responding officers observed an individual, later identified as Blake, located outside the residence on the deck walkway. Blake stated Jane Doe threw a cinder block at the window which bounced back and struck her in the head. Blake had blood on his person. The Officer detained Blake and placed him in the rear seat of the police unit to conduct further investigation.

7. When Officers approached the victim, they observed a severe head injury. Jane Doe was bleeding from her head. The officer applied first aid and took pictures of Jane Doe's injuries. Officers identified additional injuries on the Jane Doe's leg.

8. Jane Doe stated that during an argument with Blake he became enraged. Blake grabbed a board (agents later confirmed the board to be a 2x6 board) from the front porch and struck Jane Doe on the leg. Blake also threw a cinder block at Jane Doe's head. The wooden board and cinder block were part of a makeshift bench located on the front deck of the residence. Jane Doe was bleeding profusely from the head and was covered in blood from the head to the chest.

9. Shortly after, Mescalero Apache Tribal Fire and Rescue Emergency Medical Services (EMS) responded to the scene and treated Jane Doe for her injuries. Upon arrival, EMS observed Jane Doe sitting on a chair in the living room of the residence. Jane Doe was covered in blood due to the injuries caused by an assault. The BIA Officer was covering Jane Doe's injury with a quick clot gauze to stop the bleeding. Jane Doe had a bump with a laceration on the right parietal actively bleeding even after a quick clot was applied on the site of the injury. Jane Doe

stated initially she did not lose her consciousness during the assault. Jane Doe explained that she feels throbbing pain on her head where she was hit.

10. When Special Agent Jacob Glossop, BIA-OJS, responded to the scene he observed that Blake was detained, and appeared to be heavily intoxicated. He was resisting and arguing with the Patrol Officers on scene. He had blood on his right calf, right and left shorts pockets, right hand knuckles, right inner palm and fingers, right forearm, left fingers, under left fingernails, and blood splatter on the right side of his shorts.

11. After Blake was placed in the back seat of the police unit, he kicked the doors aggressively and stated the handcuffs were hurting him due to his size. The Officer checked on Blake and placed a belly chain on him. Blake was told to calm down. He later began kicked the unit door again. Blake was transported and booked at Lincoln County Detention Center (LCDC) on tribal charges. He was charged with aggravated battery and resisting lawful arrest, disorderly conduct, and battery on a reservation law enforcement officer.

12. Agent Glossop observed Jane Doe sitting inside the EMS ambulance. She was bleeding heavily from the right side of her head, and appeared to have blood clots on her head. She also had blood on her face, neck, chest, and hands. Jane Doe had a large cut near her left elbow and one near her eye, as well as bruising and scratches throughout her person.

13. Agent Glossop observed that the residence was a single story double wide mobile home, with a covered porch with a ramp. There was blood on both arm rails on the ramp, throughout the floor on the porch, and on a large wooden board and cinder block located on the porch near the front door. Blood was also observed on the lower portion of the interior screen door, and on the floor between the bed and TV stand in the living room.

14. Jane Doe was transported to the Lincoln County Medical Center (LCMC) and treated for her injuries. Medical records from that visit reflect that Jane Doe told medical personnel that her significant other assaulted her with a cinder block and wooden board on the head. Jane Doe reported pain and swelling on her head, and a headache. Her head injuries included a large bruise above her right eyebrow, and a large laceration on her head. Jane Doe also displayed skin reddening and inflammation around her neck. A Computed Tomography (CT) scan of Jane Doe's neck revealed injuries consistent with strangulation.

15. Later the same day, Agent Glossop, conducted an interview with Jane Doe at LCMC. Jane Doe stated her boyfriend Blake resides at 980 Mescalero Blvd, Mescalero, New Mexico 88340. She has been in a relationship with him for approximately three years. They do not have kids together. She was planning on spending the night at Blake's residence the night of the incident. They came back from a friend's house and Blake was cranky. Jane Doe stated Blake hit her with a cinder block and wooden board. Blake threw the cinder block at her head. He also hit her on the head with the board. Jane Doe had blood on her face and chest. After the assault, she left the residence and began walking down the road. Blake started hitting her again, striking her on the nose, and causing her nose to bleed. Jane Doe stated she thinks Blake strangled her for a few seconds.

16. Jane Doe said prior to the assault, she and Blake were drinking Vodka and sharing a tall can of Smirnoff. They initially went to get groceries in Tularosa, riding the Z-tans to get there. After they got back to Mescalero, they went to a friend's house near Blake's residence to drink.

17. During the interview, Agent Glossop observed a large cut and swelling on the right side of Jane Doe's head, minor cuts near the eye and other parts of the face, a large cut near her left elbow with stitches, and small cuts on her hands, knees, calves, and shins.

18. On June 30, 2024, at approximately 2:13 p.m., Jane Doe underwent a domestic violence examination. Jane Doe told the examiner that she did not remember getting home. She remembers getting through the door and Blake being cranky and mad. Blake had a brick in his hand (agents later confirmed the brick was a cinder block) and threw it at Jane Doe. Blake then grabbed a wooden board and hit Jane Doe with it. Both hit Jane Doe on the head. The cinder block fell and hit her leg and foot. She disclosed she had a cut on her arm and did not know what caused it. Blake also "choked" (strangled) Jane Doe for a moment (approximately couple seconds).

19. Jane Doe described how she and Blake started arguing more. She went outside the residence, and Blake said he was going to call the fire department, so Jane Doe sat on the porch. Blake tried to make Jane Doe go back inside. She asked him if he called the Police and Blake stated that he had. He said he didn't know why they weren't there. Jane Doe described going further down the road and that Blake attacked her again, striking her on the head and nose.

20. During the domestic violence examination, Jane Doe stated Blake previously strangled her approximately three times in the past.

21. On July 1, 2024, at approximately 2:38 p.m., Agent Glossop conducted an interview with Blake at the Mescalero Indian Health hospital. Blake was at the hospital for a medical clearance. Blake was read his Miranda rights, and he agreed to answer questions and provide a statement. Blake indicated he had been in an intimate relationship with Jane Doe for approximately three years and three months. Jane Doe stays with Blake majority of the time. They do not have kids together. He indicated that he wanted to ask her to marry him.

22. Blake stated that on the date of the assault, Jane Doe received some money and wanted to drink some alcohol. Blake stated his relative was coming into town who didn't drink anymore. Blake didn't want to drink around the relative. He wanted to spend time with him. Blake went to eat at the market at the Inn of the Mountain Gods with his relative. After that, they went to Lowes grocery store in Tularosa to get groceries. Blake stated they bought a half gallon of crystal palace and two cans of Smirnoff at Lowes grocery store. They used the Z-trans bus transportation to travel to Tularosa and back to Mescalero.

23. After they got home, they started eating and drinking at Blake's house. They planned on "kicking back" at his residence. Blake said they started arguing over their relationship. He remembers them arguing over being jealous of each other. Jane Doe got upset and walked out the door. Blake closed the front door behind her. Blake thinks she got upset when he did that. Blake said he heard a loud bang on the door. He opened the door and saw Jane Doe holding a large brick (cinder block) in her hand. She saw blood on her. He pulled the brick (cinder block) out of her hands, and went to get paper towels and water, but Jane Doe walked down the road. Blake said he tried to help Jane Doe, but she wouldn't let him. Jane Doe was sitting in the driveway. Blake tried putting his hand on her forehead area where it was bleeding.

24. Blake stated Jane Doe has thrown a cinder block through his front door before, and that they had previously argued over jealousy in the past.

25. Blake said they were intoxicated the time of the incident. He believes Jane Doe hit herself with the cinder block causing her injuries. He thinks the cinder block bounced off the door and hit her in the head. He said he has seen Jane Doe throw cinder blocks before. Blake denied ever throwing the cinder block and wooden board at Jane Doe. He only grabbed the cinder block out of her hands. He also denied ever putting his hands around Jane Doe's neck.

26. On July 17, 2024, Agent Glossop served a Grand Jury Subpoena to Lowes Grocery store to retrieve video recordings of Blake and Jane Doe at the store the day the incident occurred. The footage revealed Blake and Jane Doe purchased some groceries, one bottle of Chrystal Palace, one tall can twisted tea, and one tall can of Smirnoff. The footage also confirmed that they used the Z-trans transportation.

27. On June 28, 2024, the Mescalero Apache Tribal Enrollment office provided certificates of Indian blood verifying that Blake and Jane Doe are both enrolled tribal members of the Mescalero Apache Tribe.

28. On the same day, the Mescalero Apache Tribal Land Office verified that the location where the incident occurred - 980 Mescalero Blvd, Mescalero, New Mexico 88340 (33.15483, -105.79595) - is within the exterior boundaries of the Mescalero Apache Reservation.

29. There is probable cause to believe that Myron Blake, an enrolled member of the Mescalero Apache Tribe with some quantum of Indian blood, assaulted his domestic partner, Jane Doe, by strangling Jane Doe and assaulting her resulting in substantial bodily injury within the Mescalero Apache Reservation, in violation of 18 U.S.C. §§ 113(a)(7).

*JACOB GLOSSOP* Digitally signed by JACOB GLOSSOP
Date: 2025.01.30 13:20:23 -07'00'

Jacob Wade Glossop
Bureau of Indian Affairs

SUBSCRIBED AND SWORN TO ~~BEFORE ME~~ by telephone ON ____Jan 30, 2025____.

_____
UNITED STATES MAGISTRATE JUDGE